[S. F. No. 9523.   In Bank.—December 24, 1920.]

## METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Petitioner, v. JAMES ROLPH, Jr., as Mayor, etc., et al., Respondents.

[1] MANDAMUS—PERFORMANCE OF DUTY BY PUBLIC OFFICER—DEMAND.—Where demand must be made in order to impose a duty upon a public officer, *mandamus* to compel the performance of the duty will not lie unless there has been a proper demand.

[2] MUNICIPAL CORPORATIONS—SAN FRANCISCO—PAYMENT OF CLAIMS—DEMAND—CHARTER.—Under the charter of the city and county of San Francisco, it is essential, before the payment of any claim against the city and county can be made from the treasury, that a demand upon the claim should receive the check and approval of the auditor.

[3] MANDAMUS—PAYMENT OF JUDGMENT AGAINST CITY AND COUNTY OF SAN FRANCISCO—PLEADING—DEMAND.—In a proceeding for a writ of *mandamus* to compel the payment of a judgment against the city and county of San Francisco after the collection of the money by a tax levy under the act of 1901 (Stats. 1901, p. 794), it is essential that the petition allege a demand upon the auditor for the issuance of a warrant and a refusal thereof, although a

demand for the taking of the steps necessary to collect the money had been timely made.

[4] ID.—REFUSAL TO PAY JUDGMENT—INSUFFICIENT ALLEGATION OF DEMAND.—In such a proceeding, the general allegation that the respondents refuse to pay the judgment is too vague to support an implication of a demand upon the auditor for the issuance of a warrant.

[5] MUNICIPAL CORPORATIONS—TAX LEVY FOR PAYMENT OF JUDGMENT—ENTIRE AMOUNT—RIGHT OF JUDGMENT CREDITOR.—Under the act of 1901 regulating the payment of judgments against counties and municipalities, the board of supervisors in levying a tax to pay a judgment is free to exercise the option of raising a sum sufficient to pay the whole of the judgment, or of raising an amount equal to at least one-tenth thereof, but in the event that the whole amount is collected, the judgment creditor has the right upon proper demand to receive such amount in one payment.

[6] MANDAMUS — PAYMENT OF JUDGMENT — DEMAND — PLEADING — INSUFFICIENT EXCUSE.—In a proceeding for a writ of *mandamus* to compel the payment of the whole amount of a judgment obtained against a municipality, an allegation of demand for the payment of the judgment is not excused on the ground that demand would have been an empty and unavailing formality because of a resolution of the board of supervisors directing the payment of but one-tenth of the amount out of the whole amount collected under a tax levy, where such resolution was not set forth in the petition for the writ, but in an answer, which was filed at the same time as a general demurrer attacking the sufficiency of the petition.

[7] PLEADING—DEFECTS IN COMPLAINT—CONTEMPORANEOUS DEMURRER AND ANSWER.—When considering the sufficiency of a pleading attacked by demurrer, defects in the pleading attacked cannot be held to be cured by allegations in an answer filed at the same time as the demurrer, for the answer is before the court only in the event that the pleading withstands the test of the demurrer.

APPLICATION for a Writ of Mandamus to compel the payment of a judgment against a municipality. Denied.

The facts are stated in the opinion of the court.

Samuel Knight and F. Eldred Boland for Petitioner.

George Lull, City Attorney, and Maurice T. Dooling, Jr., Assistant City Attorney, for Respondents.

LENNON, J.—Petitioner recovered a judgment against the city and county of San Francisco in 1917. Demands by the

petitioner for the taking of steps necessary to the levy of a tax for the liquidation of the judgment were refused. Thereupon, on August 22, 1919, petitioner obtained from the district court of appeal a peremptory writ of mandate, directed to the mayor, auditor, and members of the board of supervisors of the city and county of San Francisco, commanding that the said judgment be examined, audited, and certified to the board of supervisors by the auditor and that the board of supervisors and mayor include in the tax levy for the fiscal year 1919–20 "a rate or sum sufficient to pay said judgment as aforesaid, or to pay an aliquot part or fraction of the amount of said judgment, such aliquot part or fraction of said judgment in no case to be less than one-tenth of the whole amount of said judgment, in conformity with that certain act of the legislature of the state of California duly and regularly approved March 23, 1901, and entitled 'An act to provide for the payment of judgments against counties, cities, cities and counties, and towns.' " (*Metropolitan Life Ins. Co.* v. *Deasy,* 41 Cal. App. 667, [183 Pac. 243].) In accordance with the writ issued, in September, 1919, when a tax for the fiscal year 1919–20 was levied, a sum to meet the obligation of the judgment in favor of petitioner was included therein.

In the present proceeding petitioner seeks a writ commanding the payment of the judgment. After setting forth the preliminary facts, the petition alleges that, in pursuance of said tax levy, a sum sufficient to pay the judgment in favor of petitioner was paid into the treasury of the city and county of San Francisco, that this sum still remains in the treasury, but that respondents, namely, the mayor, board of supervisors, auditor, and treasurer of the city and county of San Francisco, neglect and refuse to pay the same to petitioner. Respondents demur to the petition upon the ground that it fails to state facts sufficient to constitute a cause of action.

[1] Where demand must be made in order to impose a duty upon a public officer, *mandamus* to compel the performance of the duty will not lie unless there has been a proper demand. (*Fox* v. *Workman,* 155 Cal. 201, [100 Pac. 246]; *Ferguson* v. *Board of Education,* 7 Cal. App. 568, [95 Pac. 165].) The demurrer to the petition raises the question as to whether or not an allegation of demand was necessary to the

statement of a case entitling petitioner to the relief herein prayed for.

Presumably and necessarily a demand upon the claim for damages must have been presented *in limine,* or no judgment could have been recovered upon the claim in the first instance. (Charter of the City and County of San Francisco, art. II, c. 2, sec. 8.)    In addition, as previously stated, a demand for the taking of steps necessary to raise money with which to pay the judgment was made prior to the institution of the proceeding for the writ issued by the district court of appeal in *Metropolitan Life Ins. Co.* v. *Deasy, supra.*    Therefore, the question raised by the demurrer is whether or not, after the money with which to pay the judgment has been collected, it is necessary for petitioner to make and allege a separate and specific demand for the payment of the judgment before a writ commanding the payment can be issued.

The statute which regulates the payment of judgments against counties and municipalities (Stats. 1901, p. 794) imposes upon the county clerk the duty of filing with the auditor and furnishing to the body authorized to levy taxes, a list of judgments against the county or municipality; the auditor must then examine and audit the final judgments so reported and certify the same to the treasurer; thereupon the tax for the payment of such judgments is to be levied by the body authorized to levy taxes upon the property within the county or municipality.    These provisions are general in scope and do not dispense with or supplant rules regulating details of local government.    In this connection it is to be noted that the city and county of San Francisco keeps two separate and distinct sets of books—the auditor's and the treasurer's.    (Charter of the City and County of San Francisco, art. IV, c. 2; art. IV, c. 3, sec. 2.)    These books should at all times agree, for the charter requires that it shall always be possible for the auditor to tell the exact condition of the treasury.    This system is only possible by requiring all deposits to be made through the auditor's office and all withdrawals to be approved by the auditor, so that, deducting the unpaid warrants, the auditor's books will always show the amount of money in the treasury.    Accordingly, the charter of the city and county of San Francisco prohibits the payment of a claim against the city and county until a demand is first presented to the auditor and approved and certified

by him to the treasurer.   (Charter of the City and County of San Francisco, art. IV, c. 3, sec. 2; art. IV, c. 2, sec. 3.) These provisions thus operate to establish a double check upon the finances and provide for the formal notification to those in charge of the funds of the amount of the claims against said city and county and the names of the holders thereof.   They also furnish an added protection to the municipality by bringing those accepting payments from the treasury within section 72 of the Penal Code, by virtue of which the presentation of a fraudulent claim against a municipality is made a felony.

[2]   It is thus essential, before any payment can be made from the treasury, that the demand upon the claim should receive the check and approval of the auditor.   Were payments of judgments to be made without formal demand upon the judgment claim and the issuance of the auditor's warrant, not only would there be a disarrangement of the bookkeeping system of the municipality, but the treasurer would be required to assume that the judgment creditor receiving payment had not assigned or in other manner disposed of his claim, and a person could demand money from the treasury without any written evidence of his authority, either from the auditor or any other source.   It is, therefore, apparent that grave confusion would be the consequence of a failure to compel a judgment creditor to comply with the charter requirement that all demands of every sort shall first be presented to and approved by the auditor before payment can be made from the treasury.   This being so, the petitioner is not in a position to institute and maintain a proceeding for a writ directing the payment of the judgment until the auditor has been put in default by the presentation of a demand by petitioner for a proper warrant upon the treasury for the payment of petitioner's judgment, and certainly the treasurer is not in default until after he has been confronted with a warrant issued by the auditor.

[3]   We conclude, therefore, that a demand upon the auditor for the issuance of a warrant and a refusal thereof should have been alleged.   The petition does not show the making of any demand, unless a demand can be inferred from the allegation that respondents "refuse" to pay the judgment.   While it is true that sometimes the allegation of a refusal to perform an act may be sufficiently definite that

an allegation of demand may be implied therefrom (*Evansville etc. R. Co.* v. *State,* 149 Ind. 276, [49 N. E. 2]; *Commonwealth* v. *Council of Pittsburgh,* 34 Pa. St. (10 Cas.) 496), nevertheless, it is also true that it is presumed that an officer will do his duty, and, therefore, the allegations with respect to demand and refusal must be made with such precision as to show a violation of the particular duty owed to the petitioner. (*Price* v. *Riverside etc. Co.,* 56 Cal. 431; *Ingerman* v. *State,* 128 Ind. 225, [27 N. E. 499].) **[4]** In this case the general allegation of a refusal of respondents to pay the judgment fails to point with exactness to the violation of a specific duty and is, therefore, too vague to support an implication of a demand upon the auditor for the issuance of a warrant.

It is next contended in behalf of petitioner that, conceding that a demand for the payment of a judgment would ordinarily be a prerequisite to a proceeding in *mandamus* to compel the payment of the judgment, nevertheless, such a demand was not necessary in the instant case. A demand is claimed to have been unnecessary for the reason that the attitude of the officials in charge of the funds had been officially declared to be such that a demand would have been idle and useless and that, in such cases, no demand is required. (*Moore* v. *Superior Court,* 20 Cal. App. 299, [128 Pac. 946].)

The official declaration relied upon by petitioner in support of this argument is a resolution of the board of supervisors directing the treasurer to pay to petitioner, upon proper demand therefor, an amount equal to only one-tenth of the judgment, whereas petitioner is seeking to compel the payment of the whole amount of said judgment. Petitioner claims that an amount equal to the whole judgment was included in the tax levy and collected for the purpose of paying the judgment in question. Under the provisions of the statute of 1901, above referred to (Stats. 1901, p. 794), the board of supervisors, in levying a tax to pay the judgment, was free to exercise the option of raising a sum sufficient to pay the whole of petitioner's judgment or of raising an amount equal to an aliquot part of the judgment, but not less than one-tenth thereof. (*Cary* v. *Long,* 181 Cal. 443, [184 Pac. 857]; *Metropolitan Life Ins. Co.* v. *Deasy,* 41 Cal. App. 667, [183 Pac. 243].) If the board of supervisors has, in fact, actually levied and collected a tax sufficient to pay the whole

of the judgment, the right to pay the judgment in install-
ments has ceased. Section 3 of the statute of 1901 requires
the body authorized to levy taxes to "include in the tax levy
for the next fiscal year a rate or sum sufficient to pay all
final judgments existing against such county, city and county,
city, or town." If the amount of any judgment is not included
in that tax levy, the amount of such omitted judgment must
be included in the next tax levy. The following proviso is
then made: "Provided, that the board of supervisors . . .
may provide for the payment of such final judgments . . .
by including in the tax levy for the next fiscal year an ali-
quot part or fraction of the amount of such judgments, and
thereupon the treasurer shall pay to each judgment creditor
a like aliquot part or fraction of the amount of the judgment
of the creditor, and thereafter a like aliquot part or fraction
of the amount of such judgments shall be levied and paid
each successive year until the whole thereof shall be fully
paid; but such fractional levy and payment shall in no case
be less than one-tenth (1/10) of the whole amount of such
judgments." According to this section, in general the whole
amount of the judgment must be included in a single tax
levy. There is, however, a specific proviso granting the right
to include in the tax levy an amount equal to only a part of
the judgment; "thereupon" a part only of the judgment is
to be paid to the judgment creditor; "thereafter" a like frac-
tional part of the judgment is to be levied and paid each
year. The words "thereupon" and "thereafter" signify
both sequence and consequence, and indicate that an event
follows and is dependent upon the occurrence of a preceding
event. By the use of these words in the proviso, the exist-
ence of the right of paying a fractional part of the judgment
after the collection of the tax and of the right of collecting
and paying in subsequent installments is made to depend
upon and follow the collection of only a fractional part of the
judgment in the first instance. The payment of a fractional
part of the judgment is mentioned only in this proviso, which
is a separate and distinct portion of the section, providing
a special mode of collection and payment complete in itself
and different from the method prescribed in other parts of
the section. Every time that a payment of a fractional part
of the judgment is referred to, it is expressly mentioned as
concomitant to a tax levy of only a fractional part of the
amount of the judgment. Moreover, whenever the levy of a

fractional part of the judgment is made, the statute provides that a *like* fractional amount shall be paid over to the judgment creditor, thus expressing an intent to prevent the retention in the treasury of any part of the tax levied for the payment of the judgment.

[5] The statute requires a choice between two alternatives: either a single levy and payment of the whole amount of the judgment, which would be to the advantage of the judgment creditor, or annual levies and payments of a fractional part of the judgment, which would be to the interest of the taxpayers. There is no provision permitting the city to collect the whole amount of the judgment from the taxpayers and, at the same time, to withhold a considerable part thereof from the judgment creditor by retaining it in the city treasury over a period of years. Therefore, if petitioner's statement that the whole amount of the judgment has been collected is correct, petitioner was, upon proper demand, entitled to receive the whole amount of the judgment in one payment. [6] However, the fact that the treasurer was directed to pay only one-tenth of the judgment was not set forth in the petition. Respondents, at the time they demurred, filed answers which set forth the resolution of the board of supervisors directing the treasurer to pay to petitioner a sum equal to only one-tenth of the judgment, and it is upon these answers that petitioner relies for the allegations of facts excusing a demand. [7] When considering the sufficiency of a pleading attacked by demurrer, defects in the pleading attacked cannot be held to be cured by allegations in an answer filed at the same time as the demurrer, for the answer is before the court only in the event that the petition withstands the test of the demurrer. (Code Civ. Proc., sec. 472.) If there were facts existing which would make a demand an empty and unavailing formality, these should have been alleged in the petition.

By reason of failing to allege a demand for the issuance of a warrant by the auditor, the petitioner failed to show a default on the part of the officers whom it seeks to charge with the performance of a duty. The demurrer must, therefore, be sustained.

The writ is denied.

Wilbur, J., Shaw, J., Olney, J., Angellotti, C. J., Lawlor, J., and Sloane, J., concurred.